**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

      Plaintiff,

             v.

ROSE DEMOLITION & CARTING INC.,

      Defendant.

24 Civ. ___7375___

**CONSENT DECREE**

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | JURISDICTION AND VENUE | 2 |
| II. | APPLICABILITY | 2 |
| III. | ADMISSIONS | 3 |
| IV. | DEFINITIONS | 6 |
| V. | CIVIL PENALTY | 7 |
| VI. | INJUNCTIVE RELIEF | 9 |
| VII. | REPORTING REQUIREMENTS | 17 |
| VIII. | STIPULATED PENALTIES | 19 |
| IX. | FORCE MAJEURE | 21 |
| X. | DISPUTE RESOLUTION | 23 |
| XI. | INFORMATION COLLECTION AND RETENTION | 26 |
| XII. | EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS | 28 |
| XIII. | COSTS | 29 |
| XIV. | NOTICES | 29 |
| XV. | EFFECTIVE DATE | 31 |
| XVI. | RETENTION OF JURISDICTION | 31 |
| XVII. | MODIFICATION | 32 |
| XVIII. | TERMINATION | 32 |
| XIX. | PUBLIC PARTICIPATION | 33 |
| XX. | SIGNATORIES/SERVICE | 33 |
| XXI. | INTEGRATION | 34 |
| XXII. | 26 U.S.C. SECTION 162(F)(2)(A)(II) IDENTIFICATION | 34 |
| XXIII. | FINAL JUDGMENT | 34 |
| XXIV. | APPENDICES | 34 |

1.      WHEREAS, plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a complaint concurrently with this Consent Decree, alleging that defendant Rose Demolition & Carting Inc. ("Rose" or "Defendant"), violated Section 409 of the Toxic Substances Control Act (the "Act" or "TSCA"), 15 U.S.C. § 2689, and the Renovation, Repair, and Painting Rule (the "RRP Rule"), 40 C.F.R. part 745, subpart E;

2.      WHEREAS, the complaint alleges that, at numerous renovation projects at residential properties in New York City, Defendant violated the RRP Rule's certification and training requirements, lead-safe work practice requirements, warning and notice requirements, and recordkeeping requirements;

3.      WHEREAS, James Baker and Timothy Doheny, the owners of Rose, agree to enter into this Consent Decree in their personal capacities to provide the injunctive relief specified herein;

4.      WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

5.      WHEREAS, the United States has determined that Rose has documented an inability to pay the full civil penalty for which Rose otherwise would be liable for the violations alleged in the Complaint, and therefore, solely because of that documented inability to pay, the United States is prepared to settle for a lower amount reflective of Rose's ability to pay.

6.      NOW, THEREFORE, with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.    JURISDICTION AND VENUE

7.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 17 of the Act, 15 U.S.C. § 2616, and over the Parties.  Venue lies in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1395(a), because Rose is incorporated and has its principal place of business in this District, and because the complaint alleges that Rose violated TSCA and the RRP Rule within this District.

8.    For purposes of this Decree, or any action to enforce this Decree, Rose, Baker, and Doheny (the "Rose Parties") consent to the Court's jurisdiction over this Decree and any such action and over the Rose Parties and consent to venue in this judicial district.

9.    For purposes of this Consent Decree, the Rose Parties agree that the Complaint states claims upon which relief may be granted pursuant to Section 409 of the Act.

## II.    APPLICABILITY

10.    The obligations of this Consent Decree apply to and are binding upon the United States, and upon the Rose Parties and any successors, assigns, or other entities or persons otherwise bound by law.

11.    No transfer of ownership or operation of Defendant, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve the Rose Parties of their obligation, as applicable, to comply with the terms of the Decree.  At least 30 Days prior to such transfer, the Rose Parties shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written transfer agreement, to EPA and the United States Attorney for the Southern District of New York, in accordance with Section XIV (Notices).  Any attempt to transfer

ownership or operation of Defendant without complying with this Paragraph constitutes a violation of this Decree.

12.     To the extent Baker or Doheny transfer of ownership or operation of Defendant consistent with Paragraph 11, and provided that Baker or Doheny establish with sufficient evidence that they no longer have any control over, ownership of, or involvement with the operations of Defendant, Baker or Doheny (as applicable) will be relieved from obligations for compliance with this Decree as pertains to Defendant's ongoing operations after the date of transfer, but will retain all other obligations under this Decree, including obligations under Section VI of this Decree applicable to all Additional Rose Renovation Firms.

13.     The Rose Parties shall provide a copy of this Consent Decree to all officers, employees, and agents of Defendant whose duties might reasonably include compliance with any provision of this Decree. In addition, the Rose Parties shall provide a copy of the notice contained in Appendix A to any contractor or subcontractor retained by a Rose Party to perform Renovations covered by or other work required under this Consent Decree or to any contractor or subcontractor that retains Defendant to perform Renovations covered by this Consent Decree.  The Rose Parties shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

14.     In any action to enforce this Consent Decree, the Rose Parties shall not raise as a defense the failure by any of their officers, directors, employees, agents, contractors or subcontractors to take any actions necessary to comply with the provisions of this Consent Decree.

### III.    ADMISSIONS

15.     Defendant admits, acknowledges, and accepts responsibility for the following:

    a.     Between 2016 and 2019, Rose was a contractor hired by general contractors
           to conduct demolition work on at least 668 distinct residential properties in

3

New York City.  Each of these properties was originally constructed before residential use of lead-based paint was prohibited by the federal government in 1978 and thus, for purposes of the RRP Rule, is presumed to contain lead-based paint.

b.   Between 2016 and 2019, Rose violated the RRP Rule at each of the 668 renovations projects it undertook through one or more of the following:

  (1)   Rose failed to assign a Certified Renovator to direct the demolition work and discharge all of the Certified Renovator responsibilities identified in the RRP Rule;

  (2)   Rose failed to ensure that all workers performing the renovations were Certified Renovators or had received training on lead-safe work practices required by the RRP Rule;

  (3)   Rose failed to adequately contain construction dust, including dust containing high concentrations of lead, in violation of the RRP Rule;

  (4)   Rose failed to post signs clearly defining its work area and warning occupants and other persons not involved in renovation activities to remain outside of the work area in violation of the RRP Rule;

  (5)   Rose failed to provide a lead-hazard information pamphlet to the owner or occupants of the building before commencing work in violation of the RRP Rule; and

  (6)   Rose failed to maintain documentation showing that it provided lead-hazard information pamphlets to the owners or occupants of the building or that it had posted warning signs in the building, in violation of the RRP Rule.

c.   For example, in 2018, Rose performed demolition work in apartment units 1R and 4R at 1301 3rd Avenue in Manhattan, where at least one child was living in the building, and failed to use lead-safe work practices, leaving debris in building common areas that tested positive for lead.  Apartment units 1R and 4R are both one-bedroom units.

  (1)   A New York City Department of Health and Mental Hygiene ("DOH") inspector "conducted a visual walk though of floors 1-5 and observed visible construction dust and debris in the common areas" on February 19, 2018, two days after the demolition work had been completed.

  (2)   In addition, the DOH inspector observed "improper plastic containment of the front doors of units 1R and 4R."

4

(3)     The DOH inspector took ten samples of dust and debris left in the different common areas within the building, including in public hallways and stairwells.  All dust samples came back above the legal threshold for floors of 40 micrograms of lead per square foot of dust, including the floor dust sample from the first-floor public hallway, which measured 115 micrograms of lead per square foot; the floor dust sample from the first floor stairwell, which measured 185 micrograms of lead per square foot; and the floor dust sample from the third floor public hallway, which measured 1,937 micrograms of lead per square foot.

(4)     DOH found that Rose's demolition work at 1301 3rd Avenue "was improperly generating and dispersing paint chips, debris and dust" containing more than 40 micrograms of lead per square foot of dust on floors.   Therefore, DOH ordered that the building owner "immediately cease any work in progress" and "clean up all debris and dust generated by such work."

d.     On November 6, 2018, EPA inspected 40 5th Avenue, a 15-story building with 71 residential units constructed in 1929 and therefore presumed, for purposes of the RRP Rule, to have lead-based paint.

(1)     As they arrived at the property, EPA inspectors observed workers who identified themselves as Rose employees carting uncovered garbage bins full of loose dust and debris from 40 5th Avenue into a truck.

(2)     The foreman at the 40 5th Avenue work site confirmed that Rose was performing demolition work at the site and acknowledged that he was not a Certified Renovator.  None of the other Rose workers onsite were Certified Renovators, and no signs warning of possible lead hazards were posted in the building.

(3)     The EPA inspectors conducted a walk-through of apartments 2D and 3D, both of which are two-bedroom units that were undergoing a complete renovation.  The inspectors observed demolition debris covering the floors, which was not stored or sealed in bags or containers.    In addition, loose, uncontained debris was being removed from the work area in garbage bins and dumped into a garbage truck.   The inspectors also noted that doorways leading from the common areas to the apartment work areas were not set up in a manner that would allow workers to pass through while confining dust and debris to the work area.

5

## IV.   DEFINITIONS

16.     Terms used in this Consent Decree that are defined in the Act or in the RRP Rule have the meanings assigned to them in the Act or the RRP Rule, unless otherwise provided in this Decree.   Whenever the terms set forth below are used in this Consent Decree, the following definitions apply:

a.   "Additional Rose Renovation Firm" means any Firm other than Rose that is owned or controlled by a Rose Party during the term of this Consent Decree.

b.   "Abatement" has the same meaning as set forth in 40 C.F.R. § 745.223.

c.   "Rose" or "Defendant" means defendant Rose Demolition & Carting Inc.

d.   "Rose Parties" means Rose, Baker, and Doheny.

e.   "Certified Contractor" means a contractor who has been certified as a firm in accordance with 40 C.F.R § 745.89 and whose certification is in effect throughout his/her involvement with a Renovation.

f.   "Certified Firm" means a Firm that has been certified in accordance with 40 C.F.R § 745.89 and for which the certification is in effect throughout the time of its involvement with a Renovation.

g.   "Certified Renovator" means a Renovator who has been certified in accordance with 40 C.F.R. § 745.90(a).

h.   "Certified Subcontractor" means a Subcontractor that has been certified as a firm in accordance with 40 C.F.R § 745.89 and whose certification is current throughout their involvement with a Renovation.

i.   "Child-Occupied Facility" ("COF") has the same meaning as set forth in 40 C.F.R. § 745.83.

j.   "Complaint" means the complaint filed by the United States in this action.

k.   "Consent Decree" or "Decree" means this Decree and all appendices attached hereto.

l.   "Contractor" or "Subcontractor" means a Firm that performs any portion of work that constitutes Renovation as a contractor or subcontractor hired by a Rose Party or an Additional Rose Renovation Firm.

m.   "Covered Work Site" shall mean Target Housing or a Child-Occupied Facility.

6

n.  "Date of Lodging" shall mean the date this Consent Decree is filed for lodging with the Clerk of the Court for the United States District Court for the Southern District of New York.

o.  "Day" means a calendar day unless expressly stated to be a business day.  In computing any period of time for a deadline under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period runs until the close of business of the next business day.

p.  "EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies.

q.  "Effective Date" means the definition provided in Section XV.

r.  "Firm" has the same meaning as set forth in 40 C.F.R. § 745.83.

s.  "General Contractor" means a person or company engaged by a third-party to direct and oversee the overall construction project on which Rose Party or an Additional Rose Renovation Firm has been (sub)contracted to perform a Renovation.

t.  "Interest" means interest pursuant to 28 U.S.C. § 1961.

u.  "Paragraph" means a portion of this Decree identified by an Arabic numeral.

v.  "Parties" means the United States and Defendant.

w.  "Renovator" has the same meaning as set forth in 40 C.F.R. § 745.83.

x.  "Renovation" has the same meaning as set forth in 40 C.F.R. § 745.83.

y.  "Section" shall mean a portion of this Decree identified by a roman numeral.

z.  "Target Housing" has the same meaning as set forth in 40 C.F.R. § 745.103.

aa. "United States" shall mean the United States of America, acting on behalf of EPA.

## V.    CIVIL PENALTY

17.    Defendant shall pay the sum of $100,000 as a civil penalty, plus interest as described in this Paragraph. The civil penalty shall be made in five payments of $20,000, with the first payment due 60 days after the Effective Date and subsequent payments due thereafter on the anniversary of the Effective Date. Defendant shall include with the first payment an additional amount for interest accrued at the rate of 3.5% per year on the total payment amount from the Date

7

of Lodging through the date of payment. Defendant shall include with each subsequent payment an additional amount for interest accrued at the rate of 3.5% per year on the unpaid balance from the date of the previous payment through the date of the payment. After the Effective Date, the U.S. Attorney's Office for the Southern District of New York will provide to Defendant a calculation of the interest due for each payment.

18.     Defendant shall pay the civil penalty by FedWire Electronic Funds Transfer ("EFT") to the DOJ account, in accordance with instructions provided to Defendant by the United States Attorney's Office for the Southern District of New York after the Effective Date.  The payment instructions provided by the United States Attorney's Office ("USAO") will include a Consolidated Debt Collection System ("CDCS") number, which Defendant shall use to identify all payments required to be made in accordance with this Consent Decree.

19.     At the time of payment, Defendant shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; and (ii) to EPA in accordance with Section XIV; and (iii) to the United States via email or regular mail in accordance with Section XIV.  Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States of America v. Rose Demolition & Carting Inc.* and shall reference the civil action number and CDCS Number and DOJ case number 90-5-1-1-11139.

20.     Defendant may make any payment prior to its due date but must contact the USAO in advance for a determination regarding the amount of interest to be included with the payment. If any installment payment includes an overpayment, the amount of the overpayment will be applied to the remaining principal.

21.    If Defendant fails to make any payment required under Paragraph 17 by the due date, the Government may send Defendant a notice of late payment.  Except as provided in Section IX (Force Majeure), if Defendant fails to make the payment and to pay all interest and stipulated penalties owed within 30 Days of receipt of the notice, all remaining payments and all accrued interest will be due immediately. Except as provided in Section IX (Force Majeure), interest will continue to accrue on any unpaid amounts until Defendant pays the total amount due. Interest required under this Paragraph is in addition to any stipulated penalties owed under Section VIII.

22.    If Defendant becomes the subject of a proceeding under the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all remaining payments and accrued interest will be due immediately. Interest will continue to accrue on any unpaid amounts until Defendant pays the total amount due. Interest required under this Paragraph is in addition to any stipulated penalties owed under Section VIII.

23.    Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section VIII (Stipulated Penalties) in calculating its federal income tax.

24.    Defendant acknowledges that the amount of the civil penalty has been set based on its documented inability to pay a greater amount and that, in the absence of a limited ability to pay, under the relevant EPA penalty policy, Defendant's civil penalty would have been significantly higher than the agreed-upon amount.

## VI.    INJUNCTIVE RELIEF

25.    <u>RRP Rule Compliance</u>: Defendant shall comply, and the Rose Parties shall ensure that all Additional Rose Renovation Firms comply, with the RRP Rule during Renovations of Target Housing or COF, including, but not limited to, by:

      a.    Having and maintaining firm certification pursuant to 40 C.F.R. §§ 745.81(a)(2)(ii) and 745.89(a)(1) & (b);

9

b. Assigning a Certified Renovator pursuant to 40 C.F.R. §§ 745.81(a)(3) and 745.89(d)(2) to all Renovations in Target Housing or COF, and either having Certified Renovators perform all Renovation activities at Target Housing, or COF or having other individuals performing Renovation activities at Target Housing or COF trained by a Certified Renovator as provided in 40 C.F.R. §§ 745.81(a)(3) and 745.89(d)(1);

c. Ensuring that the lead hazard information pamphlet ("The Lead-Safe Certified Guide to Renovate Right") has been provided to the building owner, the owner or occupant of the unit being renovated, and/or each affected unit pursuant to 40 C.F.R. § 745.84(a), (b), and (c), obtaining a written acknowledgment of receipt of the pamphlet, except as otherwise provided for in 40 C.F.R. § 745.84 and maintaining relevant records for three (3) years after the termination of the Consent Decree;

d. Ensuring supplies necessary to perform lead-safe work practices in accordance with 40 C.F.R. § 745.85 are readily available to all the Rose Parties and Additional Rose Renovation Firm's trained workers.

e. Posting warning signs pursuant to 40 C.F.R. § 745.85(a)(1);

f. Containing the work area pursuant to 40 C.F.R. § 745.85(a)(2);

g. Containing waste from renovation pursuant to 40 C.F.R. § 745.85(a)(4); and

h. Maintaining and producing records pursuant to 40 C.F.R. §§ 745.86(a) and (b).

26. <u>Post-Renovation Cleaning and Verification</u>: Upon conclusion of the scope of RRP work assigned to Defendant as a demolition contractor or subcontractor at an ongoing worksite in Target Housing or COF and before leaving the worksite after completion of that scope of RRP work assigned, Defendant shall perform and document post-renovation clean up and verification, pursuant to 40 C.F.R. § 745.85(a)(5) and § 745.85 (b) or (c), and provide copies of the resulting records of post-renovation clean up and verification to the General Contractor.  The Rose Parties shall ensure that all Additional Rose Renovation Firms shall perform the Post-Renovation Procedures specified in this Paragraph.

27. <u>Renovation Checklist</u>: Defendant shall use, and the Rose Parties shall ensure that all Additional Rose Renovation Firms use, the Renovation Checklist attached to this Consent

10

Decree as Appendix C when performing Renovations of Target Housing or COF. Upon the completion of Defendant's scope of RRP work as a demolition contractor or subcontractor at an ongoing worksite, Defendant shall provide, and the Rose Parties shall ensure that all Additional Rose Renovation Firms shall provide, a copy of the completed Renovation Checklist to the General Contractor.

28.     Notification of Work: Defendant shall notify, and the Rose Parties shall ensure that all Additional Rose Renovation Firms notify, EPA in writing in accordance with Paragraph 77:

a.      Of each upcoming Renovation of Target Housing or COF by such entity at least 14 Days before beginning the Renovation; provided, however, if 14 Days' notice is not possible because Rose is hired to perform a Renovation with less than 14 Days' notice, notice shall be provided on the Day Rose agrees to perform the Renovation, it being agreed that for the purpose of compliance with this Paragraph 28, notice by email shall be sufficient. The notification to EPA of a Renovation shall include, at a minimum: (a) the location of the Target Housing or COF (the address) and the areas to be renovated (e.g., apartment number(s), common area(s), exterior); (b) the character of the Target Housing (e.g., single family domicile, multi-family apartment building, school building) or COF; (c) whether the Target Housing or COF will be occupied at the time of the Renovation; (d) the efforts made by Defendant, Rose Parties and/or Additional Rose Renovation Firms to determine whether children reside at or frequent the Target Housing or COF when not under Renovation and the outcome of those efforts; (e) the scope of work to be performed by the Rose Parties or the Additional Rose Renovation Firms; (f) the full name, address, and telephone number of the entity that hired Rose or the Additional Rose Renovation Firms and/or each subcontractor hired by Rose or the Additional Rose Renovation Firms to work on the Renovation, (g) the full name, address and telephone number of the individual who will be assigned as the Certified Renovator for that Renovation and a copy of his/her Renovator certificate, (h) to the extent Defendant, Rose Parties and/or Additional Rose Renovation Firms have knowledge, the name, address, and telephone number of the owner or agent of the Target Housing or COF; (i) the scheduled dates of work; and (j) any test results supporting an exemption pursuant to 40 C.F.R. § 745.86(b)(1). Additionally, the notification will state that Rose or the Additional Rose Renovation Firm authorizes EPA to inspect at the Target Housing or COF while Rose or the Additional Rose Renovation Firm is conducting the Renovation and will take all reasonable steps to secure access for EPA from the Target Housing's owner(s). If a Renovation-related change/modification (e.g., change of Certified

11

Renovator, scope of work, dates of work) becomes necessary, Rose or the Additional Rose Renovation Firm must either update their original notification to EPA for that Target Housing or send EPA a new notification promptly;

b.      Of complaints related to RRP Rule obligations that they receive verbally or in writing from tenants, neighbors, the public, tenant organizations, and workers regarding work regulated by the RRP Rule within seven (7) Days of receiving such complaints; and

c.      Of any official correspondence received from New York City agencies regarding the condition, handling, maintenance, disturbance, containment, or abatement of lead-based paint or lead-based paint hazards at a Target Housing worksite within seven (7) Days of receiving such correspondence.

29.     <u>Compliance Officer</u>: Rose shall designate, and the Rose Parties shall ensure that each Additional Rose Renovation Firm designates, a compliance officer (individually certified as a Renovator) as a point of contact to deal with lead safe work practice issues, monitor the Defendant's and each Additional Rose Renovation Firm's and each of their contractor's and subcontractors' compliance with RRP Rule requirements, and respond to EPA with regard to any other issues that may arise with regard to the performance of a Renovation (the "Compliance Officer").  Rose and/or Additional Rose Renovation Firms may share a Compliance Officer.  No Renovation work shall be performed at any Target Housing or COF unless a Compliance Officer has been designated and is available to EPA by phone or in person at any time Renovation is taking place.

30.     Rose shall offer at Rose's expense, personal protective equipment to future employees or contractors, including disposable coveralls, disposable non-latex gloves, disposable foot covers, eye protection, N-100 respirators, disposable waste bags, and duct tape.

31.     <u>Contractors and Subcontractors</u>: When hiring contractors and subcontractors, for Renovations at Target Housing or COF, Rose shall hire only certified firms as contractors and

12

subcontractors and memorialize contractor and subcontractor hiring in written contracts, copies of which shall be available to EPA upon request. Rose shall:

    a.    Require the contractors or subcontractors to use the Renovation Checklist. Regardless of the provision of any contract between the Rose and/or the Additional Rose Renovation Firm and their contractors or subcontractors, Rose and/or the Additional Rose Renovation Firm is responsible for the completion of the Renovation Checklist by its contractors or subcontractors for each Renovation of Target Housing or COF.

    b.    Suspend any contractor or subcontractor with an expired RRP certification as soon as possible but not later than twenty-four (24) hours after learning of the expired certification. Rose and/or the Additional Rose Renovation Firm shall notify EPA in writing within seven (7) Days of each suspension.

    c.    Suspend any contractor or subcontractor found to be in violation of the RRP Rule and cause their work to cease as soon as is feasible, but in no event more than twenty-four (24) hours after receiving credible notice of the violations.

    d.    Require contractors and subcontractors to certify in writing, prior to receiving payments beyond an initial deposit, that they have complied with the RRP requirements for the work they have performed or continue to perform and to submit records demonstrating compliance at the completion of the work. The designated Compliance Officer shall review these records to confirm that they demonstrate compliance prior to Rose and/or the Additional Rose Renovation Firm making final payment. Rose and/or the Additional Rose Renovation Firms shall maintain and make available to EPA any such records for three (3) years after the termination of the Consent Decree.

Nothing in this Paragraph relieves Rose, the Rose Parties, or any Additional Rose Renovation Firm of any legal responsibility it or they may have under applicable law for RRP violations during any Renovation of Target Housing or COF performed by any contractor or subcontractor.

    32.    <u>Mitigation (Occupants)</u>: No later than nine months after the Effective Date, for each Renovation that Rose performed between 2016 and 2019 on Target Housing or COF that was occupied within one year of Rose conducting the Renovation, Rose shall:

    a.    Undertake best efforts to notify each occupant household, building owner, and co-op/condominium board (if applicable) of the potential exposure to dust containing lead-based paint;

13

b.     At a minimum, notification shall be done via United States Postal Service direct mail from Rose (USPS certificates of mailing requested). In the case of households, letters can be directed to each unit without including the occupants' names. Rose shall provide a draft of each template letter to EPA for review and approval before finalizing the letters. Rose shall also provide to EPA confirmation that the letters were provided to the USPS, a list of names and addresses used for the mailing, as well as the USPS certificate of mailing for such letters sent;

c.     If Rose is unable to provide the notification(s) as required above, Rose shall inform EPA of the methods used to attempt to provide the notification(s) and the reason(s) for Rose's inability to provide such notification(s). In situations where Rose was unable to provide notification, EPA may choose to notify tenants/owners using Rose's approved template within 90 Days of receipt of information confirming Rose's inability to provide notification under Paragraph 32(a).

d.     Offer lead-dust inspection, cleanup, and clearance testing (as described in 40 C.F.R. § 745.227(e)(8) (at the time of testing)) to be conducted at the unit(s) renovated by Rose at Defendant's expense within 60 Days of Rose's receipt of a response from any household, building owner, and co-op/condominium board (if applicable) requesting the offered lead-dust inspection, cleanup, and clearance testing. For avoidance of doubt, an occupant's failure to provide access in a timely manner may constitute force majeure, as and to the extent provided by Section IX.

Rose's obligations under this Paragraph shall be considered discharged as to a given household, building owner, or co-op/condominium board if Rose does not receive a response from the household, building owner, or co-op/condominium board of a building or unit renovated by Rose within 12 months of the date Rose's or EPA's notification was mailed to the address of the unit, building owner, or co-op/condominium board (if applicable) (as indicated on the USPS certificate of mailing).

33.     <u>Mitigation (Employees)</u>:  No later than nine months after the Effective Date, for each Renovation that Rose performed between 2016 and 2019, Rose shall:

a.     Undertake best efforts to notify all employees or contractors who worked on the Renovation of the potential exposure to dust containing lead-based paint and the risk of having tracked such dust to his or her home; with respect to former employees or contractors, "best efforts" shall mean

sending a letter via USPS direct mail to such former employee's or contractor's last known address (USPS certificates of mailing requested). Rose shall also provide to EPA confirmation that the letters were provided to the USPS, a list of names and addresses used for the mailing, as well as the USPS certificate of mailing for each letter sent;

b.    Offer at Rose's expense personal protective equipment to current employees or contractors, including disposable coveralls, disposable non-latex gloves, disposable foot covers, eye protection, N-100 respirators, disposable waste bags, and duct tape;

c.    Offer lead-dust inspection, cleanup, and clearance testing (as described in 40 C.F.R. § 745.227(e)(8)) to be conducted by a firm certified to conduct abatements pursuant to 40 C.F.R. § 745.226(f) at the employees' vehicles and homes at Defendant's expense, unless Rose receives information, in writing, that the employee acquired the vehicle or home after their employment with Rose ended or after 2019, whichever is earlier. Rose will provide for such lead-dust inspection, cleanup, and clearance testing within 60 Days of Rose's receipt of a response from any former employee requesting the offered lead-dust inspection, cleanup, and clearance testing. For avoidance of doubt, a former employee's failure to provide access in a timely manner may constitute force majeure, as and to the extent provided by Section IX.

For purposes of this Paragraph, a "home" or "residence" constitutes the employee's dwelling.  If the employee resides in a multi-unit dwelling, then "home" or "residence" is the individual unit where the employee resides. Rose's obligations under this Paragraph shall be considered discharged as to a given former employee if Rose does not receive a response from the former employee within 12 months of the date Rose's notification was mailed to the former employee's address (as indicated on the USPS certificate of mailing).

34.    <u>Mitigation (Rose Vehicles)</u>:  No later than nine months after the Effective Date, to the extent that Rose used company-owned or company-leased vehicles to transport employees to or from Renovations between 2016 and 2019 on Target Housing or COF, it shall hire a firm certified to conduct abatements pursuant to 40 C.F.R. § 745.226(f) to conduct lead-dust inspections, cleanups, and clearance testing of those vehicles (provided such vehicles are still

owned or leased by the Rose Parties) pursuant to 40 C.F.R. § 745.227(e)(8), such that the lead dust levels in the vehicle meet the clearance levels for floors set by 40 C.F.R. § 745.227(e)(8)(viii). To the extent ownership of such vehicles has been transferred and provided that Rose is able to identify the individual or entity that purchased the vehicle from Rose, Rose will undertake best efforts to notify all such vehicle purchasers of the potential exposure to dust containing lead-based paint in the vehicle and the risk of having tracked such dust to the purchaser's home; "best efforts" shall mean sending a letter via USPS direct mail to such vehicle purchaser's last known address (USPS certificates of mailing requested). Rose shall also provide to EPA confirmation that the letters were provided to the USPS, a list of names and addresses used for the mailing, as well as the USPS certificate of mailing for each letter sent. Rose will offer to the individual or entity that purchased the vehicle from Rose to hire a firm certified to conduct abatements pursuant to 40 C.F.R. § 745.226(f) to conduct lead-dust inspections, cleanups, and clearance testing of those vehicles pursuant to 40 C.F.R. § 745.227(e)(8), such that the lead dust levels in the vehicle meet the clearance levels for floors set by 40 C.F.R. § 745.227(e)(8)(viii). Rose will provide for such lead-dust inspection, cleanup, and clearance testing within 30 Days of Rose's receipt of a response from any vehicle purchaser requesting the offered lead-dust inspection, cleanup, and clearance testing. Rose's obligations under this Paragraph shall be considered discharged as to a given transferred vehicle if Rose does not receive a response from the purchaser of any transferred vehicle within 12 months of the date of Rose's offer was mailed to the vehicle purchaser's address (as indicated on a USPS certificate of mailing).

35.  Mitigation (Certification):  No later than fourteen months after the Effective Date, Rose, by a senior officer, shall certify to the United States under penalty of perjury the extent to which Rose has complied with Paragraphs 32 through 34 (the "First Mitigation Certification").

The First Mitigation Certification shall specify (1) the number of notification letters mailed; (2) the number of USPS certificates of mailing obtained; (3) the number of responses from tenants, former employees, and vehicle purchasers received; (5) the number of inspections performed; (6) the number of cleanings performed; and (7) the number of clearance tests performed. To the extent Rose has not fully complied with its obligations under Paragraphs 32 through 34 as of the date of the First Mitigation Certification, it shall by the date twelve months after the First Mitigation Certification (except insofar as such date is extended under Section IX (Force Majeure)) (i) complete performance of such obligations and (ii) by a senior officer, shall provide a further certification to the United States under penalty of perjury that Rose has fully complied with Paragraphs 32 through 34. The certification shall specify (1) the total number of notification letters mailed; (2) the total number of USPS certificates of mailing obtained; (3) the total number of responses from tenants, former employees, and vehicle purchasers received; (5) the total number of inspections performed; (6) the total number of cleanings performed; and (7) the total number of clearance tests performed.

## VII.    REPORTING REQUIREMENTS

36.    <u>Annual Reporting</u>: By January 31st of each year after the lodging of this Consent Decree, until termination of this Decree pursuant to Section XVIII, the Rose Parties shall submit electronically by letter an annual report for the preceding calendar year that shall include a list of all Renovations of Target Housing or COF that Rose or each Additional Rose Renovation Firm performed in the preceding year.  For each completed Renovation, the report shall include either: (1) a certification that a determination had been made that lead-based paint was not present on the components affected by the Renovation, records to support such a determination, as described in 40 C.F.R. § 745.86(b)(1), and a contemporaneously completed Renovation Checklist; or (2) a

contemporaneously completed Renovation Checklist demonstrating compliance with the RRP Rule at a completed RRP job. To the extent that the Rose or an Additional Rose Renovation Firm did not perform any Renovation of Target Housing or COF in the preceding calendar year, the report pursuant to this Paragraph shall so state.

37.     The annual report described in Paragraph 36 shall also include a description of any violation of the requirements of this Consent Decree or the RRP Rule and an explanation of the cause of the violation and of the remedial steps taken, or to be taken, to minimize the effects of such violation and to prevent further violations.

38.     Whenever any violation of this Consent Decree or the RRP Rule or any other event affecting the Rose Parties' performance under this Consent Decree may pose an immediate threat to the public health or welfare or the environment, the Rose Parties shall stop work and notify EPA orally or by email as soon as possible, but no later than 24 hours after the Rose Parties first knew of the violation or event. Such notification must include a description of the violation or event, the threat posed, and the remedial steps taken, or to be taken, to minimize the consequences. This procedure is in addition to the requirements set forth in the preceding Paragraphs.

39.     Each report submitted by the Rose Parties under this Section shall be signed by Baker and Doheny, in their individual capacities, and a Rose official on behalf of Rose, and include the following certification:

> I certify under penalty of perjury that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

40.     This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

41.     The reporting requirements of this Consent Decree do not relieve the Rose Parties or any Additional Rose Renovation Firm of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

42.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VIII.   STIPULATED PENALTIES

43.     The Rose Parties shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section IX (Force Majeure) and subject to the dispute resolution provisions of Section X (Dispute Resolution).  A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

44.     Late Payment of Civil Penalty.  If Defendant fails to pay the civil penalty required to be paid under Section V (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $500 per Day for each Day that any payment is late.

45.     Other Violations.  The following stipulated penalties shall accrue per violation per Day for each violation by a Rose Party of a requirement set forth in Paragraph 11 or Sections VI or VII:

19

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $2,000 | 15th through 30th Day |
| $3,000 | 31st Day and beyond |

46.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

47.     A Rose Party shall pay any stipulated penalty within 30 Days of receiving the United States' written demand. The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

48.     Stipulated penalties shall continue to accrue as provided in Paragraphs 43 and 44, during any Dispute Resolution, but need not be paid until the following:

a.      If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to the Court, the Rose Party shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

b.      If the dispute is appealed to the Court and the United States prevails in whole or in part, the Rose Party shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.      If any Party appeals the District Court's decision, the Rose Party shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

49.     A Rose Party shall pay stipulated penalties owing to the United States in the manner set forth in Paragraphs 17  and 18 and with the confirmation notices required by Paragraph 19, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

50.     If a Rose Party fails to pay stipulated penalties according to the terms of this Consent Decree, the Rose Party shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for a Rose Party's failure to pay any stipulated penalties.

51.     The payment of penalties and interest, if any, shall not alter in any way a Rose Party's obligation to complete the performance of the requirements of this Consent Decree.

52.     <u>Non-Exclusivity of Remedy</u>.  Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree.  Subject to the provisions of Section XII (Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any other relief, remedy or sanction available to the United States for a Rose Party's violation of this Decree or applicable law.  However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid for that violation pursuant to this Consent Decree.

## IX.     FORCE MAJEURE

53.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of the Rose Parties, of any entity controlled by the Rose Parties, or of the Rose Parties' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite the Rose Parties' best efforts to fulfill the obligation. The requirement that the Rose Parties exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring, and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized.  "Force majeure"

does not include the Rose Parties' financial inability to perform any obligation under this Consent Decree.

54.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, the Rose Parties shall provide notice orally or by email to EPA within four (4) Days of when the Rose Parties first knew that the event might cause a delay.  Within seven Days thereafter, the Rose Parties shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; the Rose Parties' rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of the Rose Parties, such event may cause or contribute to an endangerment to public health, welfare or the environment.  The Rose Parties shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure.  Failure to comply with the above requirements shall preclude the Rose Parties from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  The Rose Parties shall be deemed to know of any circumstance of which the Rose Parties, any entity controlled by Defendant, or the Rose Parties' contractors or sub-contractors knew or should have known.

55.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force

majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify the Rose Parties in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

56.     If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify the Rose Parties in writing of its decision.

57.     If the Rose Parties elect to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution), they shall do so no later than 15 Days after receipt of EPA's notice. In any such proceeding, the Rose Parties shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 53 and 54. If the Rose Parties carry this burden, the delay at issue shall be deemed not to be a violation by the Rose Parties of the affected obligation of this Consent Decree identified to EPA and the Court.

## X.    DISPUTE RESOLUTION

58.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. The Rose Parties' failure to seek resolution of a dispute under this Section shall preclude the Rose Parties from raising any such issue as a defense to an action by the United States to enforce any obligation of the Rose Parties arising under this Decree.

59.     Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered

to have arisen when the Rose Parties send the United States and EPA a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 15 Days after the conclusion of the informal negotiation period, the Rose Parties invoke formal dispute resolution procedures as set forth below.

60.     Formal Dispute Resolution.    The Rose Parties shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by sending the United States and EPA a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting the Rose Parties' position and any supporting documentation relied upon by the Rose Parties.

61.     The United States will send the Rose Parties its Statement of Position within 45 Days of receipt of the Rose Parties' Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position is binding on the Rose Parties, unless the Rose Parties file a motion for judicial review of the dispute in accordance with the following Paragraph.

62.     Judicial Dispute Resolution.    The Rose Parties may seek judicial review of the dispute by filing with the Court and serving on the United States a motion requesting judicial resolution of the dispute. The motion (a) must be filed within 10 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph; (b) may not raise any issue not

24

raised in informal dispute resolution pursuant to Paragraph 59, unless the United States raises a

new issue of law or fact in the Statement of Position; (c) shall contain a written statement of the

Rose Parties' position on the matter in dispute, including any supporting factual data, analysis,

opinion, or documentation, and (d) shall set forth the relief requested and any schedule within

which the dispute must be resolved for orderly implementation of the Consent Decree.

63.     The United States shall respond to the Rose Parties' motion within the time period

allowed by the Local Rules of this Court.  The Rose Parties may file a reply memorandum, to the

extent permitted by the Local Rules.

64.     Standard of Review

a.      <u>Disputes Concerning Matters Accorded Record Review</u>.  Except as otherwise
        provided in this Consent Decree, in any dispute brought under Paragraph 62
        pertaining to the adequacy of proposed measures to comply with the RRP Rule or
        any other items requiring approval by EPA under this Consent Decree, the
        adequacy of the performance of work undertaken pursuant to this Consent Decree,
        and all other disputes that are accorded review on the administrative record under
        applicable principles of administrative law, the Rose Parties shall have the burden
        of demonstrating, based on the administrative record, that the position of the United
        States is arbitrary and capricious or otherwise not in accordance with law.

b.      <u>Other Disputes</u>.  Except as otherwise provided in this Consent Decree, in any other
        dispute brought under Paragraph 62, the Rose Parties shall bear the burden of
        demonstrating that its position complies with this Consent Decree and better
        furthers the objectives of the Consent Decree.

65.     The invocation of dispute resolution procedures under this Section shall not, by

itself, extend, postpone, or affect in any way any obligation of the Rose Parties under this Consent

Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with

respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but

payment shall be stayed pending resolution of the dispute as provided in Paragraph 48.  If the Rose

Parties do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as

provided in Section VIII (Stipulated Penalties).

## XI.    INFORMATION COLLECTION AND RETENTION

66.    The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any Target Housing or COF at which the Rose Parties are performing renovations or where renovation records are kept, at all reasonable times, upon presentation of credentials, to:

   a.    monitor the progress of activities required under this Consent Decree;

   b.    verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

   c.    obtain samples and, upon request and to the extent practicable, splits of any samples taken by the Rose Parties or their representatives, contractors, or consultants;

   d.    obtain documentary evidence, including photographs and similar data; and

   e.    assess the Rose Parties' compliance with this Consent Decree.

To the extent that such right of entry to Target Housing or COF requires approval by the owner(s) of the Target Housing or COF, the Rose Parties shall take all reasonable steps to obtain such approval prior to commencement of the Renovation.

67.    Until three years after the termination of this Consent Decree, the Rose Parties shall retain, and shall instruct their contractors, subcontractors, and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in their or their contractors', subcontractors', or agents' possession or control, or that come into their or their contractors', subcontractors', or agents' possession or control, and that relate in any manner to the Rose Parties' performance of their obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-

retention period, upon request by the United States, the Rose Parties shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

68.     At the conclusion of the information-retention period provided in the preceding Paragraph, the Rose Parties shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, the Rose Parties shall deliver any such documents, records, or other information to EPA.  The Rose Parties may assert that certain documents, records, or other information are privileged under the attorney-client privilege, or any other privilege recognized by federal law.  If the Rose Parties assert such a privilege, they shall provide the following:  (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by the Rose Parties. However, no documents, records, or other information created or generated by the Rose Parties pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

69.     The Rose Parties may also assert that information required to be provided under this Section is protected as TSCA-specific Confidential Business Information ("CBI") under 15 U.S.C. § 2613 or as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that Defendant seeks to protect as CBI, the Rose Parties shall follow the procedures set forth in the applicable statutory or regulatory provisions.

70.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of the Rose Parties to

maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XII.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

71.    This Consent Decree resolves only the civil claims of the United States for the violations alleged in the Complaint filed in this action through the Date of Lodging, subject to Paragraph 80.

72.    The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree.  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 71.

73.    This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  The Rose Parties are responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and the Rose Parties' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that the Rose Parties' compliance with any aspect of this Consent Decree will result in compliance with the Act, or with any other provisions of federal, State, or local laws, regulations, or permits.

74.    This Consent Decree does not limit or affect the rights of the Rose Parties or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights

of third parties, not party to this Consent Decree, against the Rose Parties, except as otherwise provided by law.

75.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIII.   COSTS

76.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by the Rose Parties.

## XIV.   NOTICES

77.     Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing, addressed as follows:

As to the United States by email:    monica.folch@usdoj.gov

As to DOJ by mail:    Monica Folch, AUSA
U.S. Attorney's Office
86 Chambers St., 3rd Floor
New York, NY 10007
Tel.: (212) 637-6553

As to EPA by email:    perez.rudolph@epa.gov
somma.jerry@epa.gov

As to the Rose Parties by mail:    James R. Baker
Rose Demolition & Carting, Inc.
95 Bruckner Boulevard
Bronx, NY 10454

Timothy J. Doheny
Rose Demolition & Carting, Inc.
95 Bruckner Boulevard
Bronx, NY 10454

With electronic copies to:    james@rosedemo.com
Tim@rosedemo.com

As to the Rose Parties' Attorney:    Patricia Boye-Williams
Murtha Cullina LLP
280 Trumbull Street
Hartford, CT 06103

With an electronic copy to:    pboyewilliams@murthalaw.com

78.    Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

79.    Notices submitted pursuant to this Section shall be deemed submitted upon mailing or transmission by email, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

80.    The Rose Parties acknowledge that the United States has relied on the financial information provided by Defendant to the United States identified in Appendix B, in entering into

the Consent Decree.  Such representations and financial information are material to the United States' decision to agree to the terms contained herein.  Accordingly, the United States reserves its right to seek additional relief (including payment of additional civil penalty) judicially or administratively with respect to the matters contained in the Complaint if representations or financial information are materially inaccurate or contain material omissions, notwithstanding Paragraph 71.  Any such relief would be in addition to, and not in lieu of, the Rose Parties' agreements under this Consent Decree.  The Rose Parties waive any statute of limitations defense that may otherwise apply to such additional relief.  The Rose Parties reserve their defenses to such additional relief except the defense that Paragraph 71 bars such relief and except any statute of limitations defense.

## XV.   EFFECTIVE DATE

81.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that the Rose Parties hereby agree that they shall be bound to perform duties scheduled to occur prior to the Effective Date.  In the event the United States withdraws or withholds consent to this Consent Decree before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

## XVI.   RETENTION OF JURISDICTION

82.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections X and XVII, or effectuating or enforcing compliance with the terms of this Decree.

## XVII.  MODIFICATION

83.     The terms of this Consent Decree, including the attached appendices, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

84.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section X (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 64, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVIII. TERMINATION

85.     After the Rose Parties have completed the requirements of Paragraphs 32 and 35 and maintained continuous satisfactory compliance with this Consent Decree for a period of three years after the Effective Date, and have paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, the Rose Parties may serve upon the United States a Request for Termination, stating that the Rose Parties have satisfied those requirements, together with all necessary supporting documentation.

86.     Following receipt by the United States of the Rose Parties' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether the Rose Parties have satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

87.     If the United States does not agree that the Decree may be terminated, the Rose Parties may invoke Dispute Resolution under Section X.  However, the Rose Parties shall not seek

Dispute Resolution of any dispute regarding termination until 30 Days after service of its Request for Termination.

## XIX.   PUBLIC PARTICIPATION

88.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  The Rose Parties consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified the Rose Parties in writing that it no longer supports entry of the Decree.

## XX.   SIGNATORIES/SERVICE

89.     Each undersigned representative of the Rose Parties and the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

90.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  The Rose Parties agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.  The Rose Parties need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXI.  INTEGRATION

91.   This Consent Decree, including its Appendices and deliverables that are subsequently approved pursuant to this Decree, constitutes the entire agreement among the Parties regarding the subject matter of the Decree and supersedes all prior representations, agreements and understandings, whether oral or written, concerning the subject matter of the subject matter of the Decree herein.

## XXII.  26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION

92.   For purposes of the identification requirement in Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), and 26 C.F.R. § 1.162-21(b)(2), performance of Paragraph 13, Sections VI and VII, Paragraphs 66 to 68, Paragraph 70, and Appendices A and C is restitution, remediation, or required to come into compliance with law.

## XXIII. FINAL JUDGMENT

93.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and the Rose Parties.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

## XXIV. APPENDICES

94.   The following Appendices are attached to and part of this Consent Decree:

"Appendix A" is a notice referred to in Paragraph 13;

"Appendix B" is a list of ability-to-pay documentation; and

"Appendix C" is the Renovation Checklist.

.

Dated and entered this 30 day of    January    , 2025

LEWIS J. LIMAN
United States District Judge

FOR THE UNITED STATES OF AMERICA:

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

September 27, 2024
‾‾‾‾‾‾‾‾‾‾
Date

By: ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
MONICA P. FOLCH
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, NY 10007
Tel.: (212) 637-6559/2728
Fax: (212) 637-2786
Email: monica.folch@usdoj.gov

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

September 16, 2024

PAUL SIMON

Digitally signed by PAUL
SIMON
Date: 2024.09.16
11:14:12 -04'00'

_____
Date

PAUL SIMON
Regional Counsel
U.S. Environmental Protection Agency, Region 2
290 Broadway
New York, NY 10007-1866

FOR ROSE DEMOLITION & CARTING, INC.:

_9/14/24_
Date

_____
JAMES BAKER
its Chief Executive Officer


FOR BAKER AND DOHENY:

_9/14/24_
Date

_____
JAMES BAKER


_9/16/24_
Date

_____
TIMOTHY DOHENY